# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

ANAIDA GRIGORYAN,                    )     No.  CV 07-7081-PLA
                                     )
                    Plaintiff,       )
                                     )     **MEMORANDUM OPINION AND ORDER**
          v.                         )
                                     )
MICHAEL J. ASTRUE,                   )
COMMISSIONER OF SOCIAL               )
SECURITY ADMINISTRATION,             )
                                     )
                    Defendant.       )
_____)

## I.

### PROCEEDINGS

       Plaintiff filed this action on November 5, 2007, seeking review of the Commissioner's denial

of her application for Supplemental Security Income.  The parties filed Consents to proceed before

the undersigned Magistrate Judge on November 28, 2007, and February 19, 2008.  Pursuant to

the Court's Order, the parties filed a Joint Stipulation on August 4, 2008, that addresses their

positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation

under submission without oral argument.

/

/

## II.

## <u>BACKGROUND</u>

Plaintiff was born on July 5, 1954.  [Administrative Record ("AR") at 31, 57, 84.]  She has at least a high school equivalent education[1] [AR at 82, 288], and no past relevant work experience. [AR at 77, 289-91.]

On January 20, 2005, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since August 1, 2004, due to high blood pressure, anemia, pain in veins, numbness in hands, dizziness, and back pain.  [AR at 57, 76, 84.]   After her application was denied initially,[2] plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 36, 42-44, 50-64.]  A hearing was held on June 9, 2006, at which time plaintiff appeared with a non-attorney representative and testified, through an interpreter, on her own behalf.  [AR at 282-312.]  A vocational expert also testified.  [AR at 306-08, 310-11.]  On December 28, 2006, the ALJ determined that plaintiff was not disabled.  [AR at 15-28.]  Plaintiff requested review of the hearing decision.  [AR at 13.]  When the Appeals Council denied plaintiff's request for review on September 27, 2007, the ALJ's decision became the final decision of the Commissioner.  [AR at 6-9.]  This action followed.

## III.

## <u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1]    At the hearing on June 9, 2006, plaintiff testified that she "graduated the 10th grade" in her native country of Russia.  [AR at 288.]  She further testified that her 10th grade education is equivalent to "American high school."  [<u>Id.</u>]

[2]    The ALJ in the decision noted that there was no reconsideration determination "as this is a 'prototype' case."  [AR at 18.]

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

**IV.**

**THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals

3

an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since the alleged onset date of the disability. [AR at 20.] At step two, the ALJ concluded that plaintiff has the following "severe" combination of impairments: "right posterior neck mass (status post excisional biopsy and pathology report of invasive adenocarcinoma consistent with the breast as the primary site but negative breast workup), hypertension, anemia, varicose veins, thrombophlebitis, obesity, and a depressive disorder, not otherwise specified." [Id. (citations omitted).] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 22.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to "perform the full range of medium work." [AR at 22.] Specifically, the ALJ determined that plaintiff is able to "lift, carry, push, and/or pull 50 pounds occasionally and 25 pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday with normal breaks[,] . . . [and] climb, balance, stoop, kneel, crouch, and crawl

---

[3]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

1  frequently." [AR at 22.]  At step four, the ALJ concluded that plaintiff had no past relevant work.

2  [AR at 27.]  At step five, the ALJ found, based on the vocational expert's testimony and use of

3  Medical-Vocational Rule 203.21 as a framework, that "there are jobs that exist in significant

4  numbers in the national economy that [plaintiff] can perform."  [Id.]  Accordingly, the ALJ

5  determined that plaintiff is not disabled.  [AR at 28.]

6

7                                                    **V.**

8                                      **THE ALJ'S DECISION**

9          Plaintiff contends that the ALJ failed to: (1) properly consider plaintiff's malignant neoplastic

10  disease as a basis of disability; (2) adopt the nonexertional limitations of the State Agency

11  evaluator; (3) resolve the inconsistency between the vocational expert's testimony and the

12  Dictionary of Occupational Titles ("DOT"); and (4) pose a complete hypothetical to the vocational

13  expert.  Joint Stipulation ("Joint Stip.") at 3.  As set forth below, the Court agrees with plaintiff, in

14  part, and remands the matter for further proceedings.

15

16  **A.      THE LISTING DETERMINATION**

17          Plaintiff argues that the ALJ failed to consider plaintiff's malignant neoplastic disease at step

18  three of the evaluation process.  Joint Stip. at 5-6, 8-9.

19          If a claimant has an impairment or combination of impairments that meets or equals a

20  condition outlined in the Listing, then the claimant is presumed disabled at step three of the

21  evaluation process, and the ALJ need not make any specific findings as to her ability to perform

22  her past relevant work or any other jobs.  See 20 C.F.R. §§ 404.1520(d), 416.920(d).  "An ALJ

23  must evaluate the relevant evidence before concluding that a claimant's impairments do not meet

24  or equal a listed impairment.  A boilerplate finding is insufficient to support a conclusion that a

25  claimant's impairment does not do so."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing

26  Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).

27          The Listing contains descriptions of various physical and mental illnesses and

28  abnormalities, which are categorized by the body system they affect.  See 20 C.F.R. §§

                                                    5

1    404.1525(a); 416.925(a) (the Listing "describes for each of the major body systems impairments

2    that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity,

3    regardless of his or her age, education, or work experience").  Each body system section of the

4    Listing includes an introduction with information relevant to the use of the listings in that section,

5    followed by the specific listings.  See 20 C.F.R. §§ 404.1525(c)(1)-(3); 416.925(c)(1)-(3).  "Within

6    each listing, [the Social Secuirty Administration] specif[ies] the objective medical and other findings

7    needed to satisfy the criteria of that listing."  Id. at §§ 404.1525(c)(3); 416.925(c)(3).  In order for

8    a claimant's impairment or combination of impairments to meet the requirements of a listing, all

9    of the criteria of that listing, including any relevant criteria in the introduction, and the duration

10   requirement, must be satisfied.  See id.; see also Social Security Rulings ("SSR")[4] 83-19 ("[a]n

11   impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the

12   specific findings described in the set of medical criteria for that listed impairment.").  A claimant's

13   "impairment(s) cannot meet the criteria of a listing based only on a diagnosis."  20 C.F.R. §§

14   404.1525(d), 416.925(d); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("[t]he mere

15   diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability.").

16   "By comparing the clinical signs, symptoms, and laboratory findings from the evidence of record

17   with those in the listing, the [ALJ] can usually readily determine whether the listing is met."  SSR

18   83-19.  To equal a listed impairment, a claimant's impairment must "at least equal in severity and

19   duration" the criteria of a listed impairment.  See 20 C.F.R. §§ 404.1526(a), 416.926(a); see also

20   83-19 (a claimant's impairment is "equivalent" to a listing only if her symptoms, signs, and

21   laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most

22   like the claimant's impairment).

23        Here, the ALJ evaluated the evidence relevant to plaintiff's malignant neoplastic disease

24   and concluded that "[t]he claimant does not have an impairment or combination of impairments

25

26        _____

27        [4]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they
     "constitute Social Security Administration interpretations of the statute it administers and of its own
     regulations," and are given deference "unless they are plainly erroneous or inconsistent with the
28   Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

1   that meets or medically equals one of the listed impairments . . .".  [AR at 22, 24, 26.]  While an

2   ALJ must sufficiently evaluate evidence relevant to the listed impairment analysis, he or she need

3   not state why plaintiff failed to satisfy every criteria of the Listing.  See Gonzalez v. Sullivan, 914

4   F.2d 1197, 1201 (9th Cir. 1990) ("[i]t is unnecessary to require the [ALJ], as a matter of law, to

5   state why a claimant failed to satisfy every different section of the listing of impairments."); see

6   also, e.g., Hammond v. Astrue, 2008 WL 276360, at *30 (D. Ariz. Jan. 29, 2008) ("the ALJ is not

7   required to state why a claimant fails to satisfy every criteria of the listing if [he] adequately

8   summarize[s] and evaluate[s] the evidence") (citation omitted).  Contrary to plaintiff's assertions

9   (see Joint Stip. at 3-5, 8-9), the ALJ's discussion of the evidence includes evidence that a

10  reasonable person might find adequate to support the ALJ's decision that plaintiff's impairments

11  or combination of impairments do not meet or equal any of the impairments in the Listing.  See

12  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

13       Malignant neoplastic diseases are evaluated in the Listing under section 13.00.  See 20

14  C.F.R., Part 404, Subpart P, Appendix 1, Section 13.00.  In evaluating malignant neoplastic

15  diseases, the Social Security Administration ("SSA") considers factors such as the: (1) origin of

16  the malignancy; (2) extent of involvement; (3) duration, frequency, and response to antineoplastic

17  therapy, i.e., surgery, irradiation, chemotherapy, hormones, immunotherapy, or bone marrow or

18  stem cell transplantation; and (4) effects of any post-therapeutic residuals. 20 C.F.R., Part 404,

19  Subpart P, Appendix 1, Section 13.00(B).  Generally, the SSA evaluates both the operative note

20  and pathology report for operative procedures. Id. at § 13.00(D)(2). "In many cases, malignancies

21  meet listing criteria only if the therapy does not achieve the intended effect: the malignancy

22  persists, progresses, or recurs despite treatment." Id. at § 13.00(G)(1).  Because therapy and its

23  toxicity may vary widely, each case is considered on an individual basis.  Id. at § 13.00(G)(2)(a).

24  With respect to therapy, the SSA considers the following: drugs given, dosage, frequency of drug

25  administration, plans for continued drug administration, extent of surgery, schedule and fields of

26  radiation therapy, and complications or adverse effects of therapy, including, among other things,

27  persistent weakness and neurological complications.  Id. at § 13.00(G)(2)(a).

28

1    Although the ALJ did not specifically cite the listing under which he considered plaintiff's

2  malignant neoplastic disease, the ALJ adequately evaluated the evidence relevant to such a

3  consideration. [AR at 22, 24, 26.]  Specifically, the ALJ in the decision found, based on the medical

4  evidence, that "[w]hile [plaintiff] has cancer, the primary site has not been identified," and "[a] work-

5  up was negative for metastases or breast cancer."  [AR at 26, 195-244, 251-53.]  The ALJ noted

6  oncologist Dr. Mark Goldstein's finding that "'[plaintiff] may well go months if not even a couple of

7  years before she has significant disease elsewhere in her body even without active therapy.'"  [AR

8  at 26, 253.]  He also noted that plaintiff "has no residuals from removal of the mass from her neck."

9  [AR at 26, 163, 196, 200-04, 254-57.]  As such, the ALJ properly evaluated plaintiff's neoplastic

10  disease, and his conclusion that she does not meet or equal a listed impairment is supported by

11  substantial evidence in the record.  Remand is not warranted on this issue.

12

13  **B.    STATE AGENCY PHYSICIAN**

14    Plaintiff claims that the ALJ's failure to adopt the nonexertional limitations of the State

15  Agency evaluator was error.  Joint Stip. at 9.  Specifically, plaintiff asserts that the ALJ failed to

16  explain why he ultimately rejected the State Agency evaluator's opinion that plaintiff needs to avoid

17  even moderate exposure to noise and vibration.  Joint Stip. at 9-10.

18    Although an ALJ is not bound by the findings made by State Agency medical consultants,

19  the State Agency physicians are considered "highly qualified physicians who are also experts in

20  Social Security disability evaluation."  See 20 C.F.R. §§ 404.1597(f)(2)(i), 416.927(f)(2)(i).

21  Therefore, an ALJ must consider the findings of a State Agency medical consultant as opinion

22  evidence.  See id.  "When the ALJ considers the findings of a State Agency medical consultant,

23  the ALJ evaluates the findings using factors such as medical speciality and expertise in social

24  security rules, supporting evidence in the case record, supporting explanations provided by the

25  physician, and any other factors relevant to the weighing of the opinions."  See Wimberly v. Astrue,

26  2008 WL 4381617, at *5 (C.D. Cal. Sept. 25, 2008) (citation omitted); see also 20 C.F.R. §§

27  404.1527(f)(2)(ii), 416.927(f)(2)(ii).  As such, an ALJ is required to consider and evaluate any

28  assessment of an individual's residual functional capacity by a State Agency physician.  See SSR

8

1    96-6p.  Where the ALJ rejects the opinion of a nonexamining State Agency medical consultant,

2    the ALJ must provide reasons for doing so.  See SSR 96-6p (ALJ "must explain weight given" to

3    the opinion a State Agency medical consultant); see also Andrews, 53 F.3d at 1039 ("[G]iving the

4    examining physician's opinion *more* weight than the nonexamining expert's opinion does not mean

5    that the opinions of nonexamining sources and medical advisors are entitled to *no* weight.")

6    (emphasis in original); SSR 96-6p ("In appropriate circumstances, opinions from State agency

7    medical and psychological consultants and other program physicians and psychologists may be

8    entitled to greater weight than the opinions of treating or examining sources.").

9            On March 8, 2005, a State Agency internist[5] completed a Physical Residual Functional

10   Capacity Assessment form, in which she opined that plaintiff could, among other things, lift and/or

11   carry 50 pounds on an occasional basis and 25 pounds on a frequent basis, stand and/or walk (with

12   normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total

13   of about 6 hours in an 8-hour workday, and climb, balance, stoop, kneel, crouch, and crawl on a

14   frequent basis.  [AR at 170-71.]  As for environmental restrictions, the State Agency internist found

15   that plaintiff needs to "avoid even moderate exposure" to noise and vibration because such exposure

16   "[c]an trigger tension headaches."  [AR at 173.]  In so finding, she noted plaintiff's allegations of

17   headaches, dizziness, anemia, and varicose veins, as well as the treating physician's findings of

18   headaches and dizziness provoked by noise and tension.  [AR at 174.]

19           In the decision, the ALJ gave the "greatest weight" to the opinion of consultative internist

20   Dr. Homayoun Saeid, who found that plaintiff could perform the full range of medium work with

21   frequent postural activities.  [AR at 25-26.]  The ALJ noted the State Agency internist's opinion that

22   plaintiff was capable of performing work at the medium level of exertion with frequent postural

23   activities and avoidance of even moderate exposure to noise and vibration.  [AR at 25.]  The ALJ

24   found the State Agency internist's opinion "essentially consistent" with the opinion of Dr. Saeid,

25

26           [5]   While the name of the medical consultant is not entirely clear, the medical specialty
      code associated with this particular physician is "19," which is the medical specialty code used
27   for internal medicine.  [AR at 176.]  See Social Security Administration's Program Operations
      Manual ("POMS") § DI 27015.135(C), on the Social Security Online database, at https://secure.
28   ssa.gov/apps10/poms.nsf/lnx/0427015135.

1   and concluded that even if he "were to adopt the opinion of the State Agency internist, the

2   outcome in this case would remain the same." [Id.]

3        The ALJ's conclusion that the opinions of the State Agency internist and Dr. Saeid are

4   "essentially consistent" is misleading, as there is a material difference between the two opinions

5   with respect to plaintiff's environmental limitations. [AR at 25.] The State Agency internist found

6   that plaintiff needs to avoid even moderate exposure to noise and vibration, while Dr. Saeid found

7   that plaintiff has no environmental limitations whatsoever. [Compare AR at 173, with AR at 271.]

8   In his RFC determination, the ALJ found plaintiff capable of performing the full range of medium

9   work, but did not restrict plaintiff from working in environments with even moderate exposure to

10  noise and vibration. [AR at 22.] The ALJ is not permitted to selectively choose from an opinion

11  to support the RFC determination. See, e.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir.

12  1984) (error for an ALJ to ignore competent evidence in the record in order to justify his

13  conclusion). The ALJ's failure to include the environmental restrictions in the RFC assessment

14  resulted in an implicit rejection of that portion of the State Agency internist's opinion. See, e.g.,

15  Smith v. Massanari, 139 F. Supp. 2d 1128, 1133 (C.D. Cal. 2001) (reliance on one physician's

16  opinion in making a finding, which differs from that of another physician, is an implicit rejection of

17  the latter). Although the ALJ noted the State Agency internist's opinion that plaintiff is "capable

18  of performing work at the medium level of exertion with frequent postural activities and avoidance

19  of even moderate exposure to noise and vibration" [AR at 25], he articulated no reason for

20  ultimately excluding her opinion as to plaintiff's environmental limitations from the RFC

21  assessment.[6] See SSR 96-8p (the RFC assessment must always consider and address medical

22

23        [6]   Defendant contends that "there is no mention of 'headaches' in the record that would
give rise to a noise/vibration limitation." Joint Stip. at 11. However, the State Agency internist's

24  opinion that plaintiff needs to avoid even moderate exposure to noise and vibration because such
exposure can cause tension headaches was based on evidence in the record. [AR at 163, 173-

25  74, 254.] Moreover, the ALJ in the decision did not proffer the lack of evidence of tension
headaches as a reason for rejecting the State Agency internist's opinion that plaintiff avoid even

26  moderate exposure to noise and vibration. As such, defendant's post hoc attempt to justify the

27  ALJ's rejection of the State Agency internist's opinion is not sufficient to cure the error. See Vista
Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm

28  an administrative decision only on grounds articulated by the agency); see also Barbato v.

1    source opinions, and if the assessment conflicts with an opinion from a medical source, the ALJ

2    must explain why the opinion was not adopted); see also Cotter v. Harris, 642 F.2d 700, 706-07

3    (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the

4    wrong reason [citation omitted], an explanation from the ALJ of the reason why probative evidence

5    has been rejected is required so that a reviewing court can determine whether the reasons for

6    rejection were improper.").   The ALJ erred by failing to properly consider the State Agency

7    internist's opinion that plaintiff needs to avoid even moderate exposure to noise and vibration in

8    determining plaintiff's RFC.[7]

9

10   **C.    ABILITY TO PERFORM OTHER WORK**

11       Plaintiff contends that the ALJ's reliance on the jobs cited by the vocational expert to find

12   that plaintiff could perform other work in the national economy warrants remand, as the vocational

13   expert's testimony was inconsistent with the DOT.  Joint Stip. at 14-15.  Plaintiff also argues that

14   the ALJ posed an incomplete hypothetical question to the vocational expert, which resulted in

15   "erroneous testimony."  Joint Stip. at 16-17.

16

17

18   _____

     Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may

19   remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not

20   adequately explain how a conclusion was reached, even if Social Security Administration can offer
     proper *post hoc* explanations for such unexplained conclusions).

21       [7]   The ALJ's conclusion that the outcome of this case would remain the same even if he

22   adopted the State Agency internist's opinion does not render his failure to properly consider the
     State Agency internist's opinion harmless error.  As discussed below, the adoption of the State

23   Agency internist's opinion could indeed alter the outcome of this case.  [AR at 25, 28.]  See Stout
     v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch v. Barnhart, 400

24   F.3d 676, 679 (9th Cir. 2005) (the theory of harmless error applies in social security cases)); see

25   also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (an error is harmless if it is
     "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability

26   determination'"); cf. Attia v. Astrue, 2007 WL 2802006, at *29 (E.D. Cal. Sept. 24, 2007) (citing
     Stout) ("where an error consists of an ALJ's failure to discuss probative evidence properly, a

27   reviewing court cannot consider the error harmless unless it can confidently conclude that no
     reasonable ALJ, when fully crediting the evidence, could have reached a different disability

28   determination").

1    At step five of the sequential evaluation process, the burden shifts to the Commissioner to

2    prove that, based on the claimant's RFC, age, education, and past work experience, she can

3    perform some type of substantial gainful activity that exists in "significant numbers" in the national

4    economy. See Smolen, 80 F.3d at 1291; see also 20 C.F.R. §§ 404.1520(a)(4)(v),

5    416.920(a)(4)(v); Bowen v. Yuckert, 482 U.S. 137, 146 n.6 (1987) ("It is true . . . that the Secretary

6    bears the burden of proof at step five, which determines whether the claimant is able to perform

7    work available in the national economy."). An ALJ may apply the grids to determine whether a

8    claimant can make a successful adjustment to other work. See Jones v. Heckler, 760 F.2d 993,

9    998 (9th Cir. 1985) ("[I]n determining whether a claimant can do substantial gainful work, the ALJ

10   may apply the Secretary's medical-vocational guidelines . . . ."). But "if the grids fail to describe

11   *accurately* a claimant's particular limitations, the [ALJ] may *not* rely upon the grids *alone* to show

12   availability of jobs for the claimant." Gonzalez v. Secretary of Health and Human Servs., 784 F.2d

13   1417, 1419 (9th Cir. 1986) (citations and quotations omitted) (emphasis in original); see Jones,

14   760 F.2d at 998 (the ALJ should rely on the grids "only when the grids accurately and completely

15   describe the claimant's abilities and limitations"). Generally, an ALJ should obtain a vocational

16   expert's opinion where the plaintiff either suffers from only nonexertional impairments or suffers

17   from a combination of exertional and nonexertional impairments. See Cooper v. Sullivan, 880

18   F.2d 1152, 1155 (9th Cir. 1989) ("[W]here a claimant suffers solely from a nonexertional

19   impairment, the grids do not resolve the disability question; other testimony is required. In cases

20   where the claimant suffers from both exertional and nonexertional impairments, the situation is

21   more complicated.").

22   In this case, the ALJ found that "[b]ased on a residual functional capacity for the full range

23   of medium work, considering [plaintiff's] age, education, and work experience, a finding of 'not

24   disabled' is directed by Medical-Vocational rule 203.21." [AR at 27-28.] The ALJ further found that

25   the vocational expert's testimony "corroborated rule 203.21." [AR at 28.] During the June 9, 2006,

26   hearing, the ALJ posed the following hypothetical, at issue here, to the vocational expert:

27        [I]f I found that the claimant had the residual functional capacity given
          by the State Agency at [AR at 169-76] and found that the claimant
28        could lift 50 pounds occasionally, 25 pounds frequently. Stand and/or

1           walk about six hours.  And had to avoid noise, even moderate
          exposure to noise and vibration.  Would there be any other work that
2           an individual with this claimant's vocational profile could do?

3 [AR at 307.]  The vocational expert testified that an individual with the vocational profile described

4 by the ALJ would be able to perform the jobs of hand packager and stubber.  [AR at 307-08, 310-

5 11.]  Based on this testimony, the ALJ concluded that plaintiff could perform a significant number

6 of jobs in the national economy.  [AR at 27-28.]  In so concluding, the ALJ stated that "[g]iven that

7 the claimant has a less restrictive residual functional capacity than that given to the vocational

8 expert at the hearing, the claimant would be able to perform the jobs mentioned by the vocational

9 expert in addition to other jobs."[8]  [AR at 28.]  Plaintiff's arguments relevant to the vocational

10 expert's testimony are twofold, and will be discussed in turn below.

11

12        **1.    Hand Packager**

13      Plaintiff argues that according to the DOT, the job of hand packager (DOT No. 920.587-

14 018), cited by the vocational expert as a job that an individual with plaintiff's limitations could

15 perform, requires plaintiff to exceed the residual functional capacity set forth in the hypothetical

16 question.  Joint Stip. at 14.  Specifically, plaintiff asserts that the job of hand packager "cannot be

17 performed by an individual limited to less than moderate levels of noise and vibration."  Id.  Plaintiff

18 further argues that an ALJ cannot rely on the testimony of a vocational expert that deviates from

19 the DOT unless the record contains persuasive evidence to support the deviation.  Id.

20

21

22      [8]   Although the ALJ in the decision at step five cited the Physical Residual Functional

23 Capacity Assessment form completed by the State Agency internist, he erroneously stated that he
"asked the vocational expert whether jobs would be available in significant numbers in the local and

24 national economy for a hypothetical individual with the claimant's vocational profile and a residual
functional capacity for medium work and the ability to climb, balance, stoop, kneel, crouch and

25 crawl frequently, but with a limitation on *moderate exposure to vibration and fumes, odors, dust,*

26 *gases and poor ventilation.*"  [AR at 28 (emphasis added).]  This is clearly a misstatement as the
hypothetical question actually posed to the vocational expert included a limitation only to *moderate*

27 *exposure to noise and vibration* as found by the State Agency internist.  [AR at 307.]  Regardless,
the hypothetical question posed to the vocational expert was more restrictive than the residual

28 functional capacity set forth by the ALJ in the decision.

1    "[T]he best source for how a job is generally performed is usually the Dictionary of

2    Occupational Titles.  In order for an ALJ to accept vocational expert testimony that contradicts the

3    Dictionary of Occupational Titles, the record must contain 'persuasive evidence to support the

4    deviation.'"  See Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) (citing Johnson v.

5    Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)).  When the ALJ's decision contradicts the DOT, the

6    ALJ must offer an explanation regarding why he or she is rejecting the DOT's description.  See

7    Johnson, 60 F.3d at 1434, 1435 n.7 ("[i]n this case the ALJ's explanation is satisfactory because

8    the ALJ made findings of fact that support a deviation from the DOT.  The ALJ noted that the

9    vocational expert described the characteristics and requirements of jobs in the local area."); see

10   also Terry v. Sullivan, 903 F.2d 1273, 1278 (9th Cir. 1990).

11       Here, the vocational expert's testimony that an individual with plaintiff's vocational profile

12   could perform the job of hand packager is at odds with the description in the DOT concerning the

13   hand packager job.  Although the hand packager job is classified as unskilled with a medium

14   exertional level, the noise classification is "Level 4 - Loud."  See DOT No. 920.587-018 (entitled

15   "Packager, Hand").  Thus, the noise level classification conflicts with the vocational expert's

16   testimony that an individual with a restriction to even moderate exposure to noise and vibration

17   could perform the job of hand packager.[9]  To the extent a conflict exists between the vocational

18   expert's testimony and the DOT, there must be persuasive evidence supporting any decision to

19   rely on the vocational expert's opinion rather than on the information provided in the DOT.  See

20

21       [9]    The vocational expert's testimony that the description of the job of hand packager is
22   consistent with the DOT cannot be reconciled with her testimony as a whole.  [AR at 311.]  At the
     hearing, the vocational expert initially indicated that an individual with plaintiff's vocational profile
23   could perform the job of food-service worker, but then noted that such a job "may not be an
     appropriate choice" based on the noise level classification in the DOT.  [AR at 307.]  According
24   to the DOT, the noise classification for the food-service worker job is "Level 3 - Moderate."  See
     DOT No. 319.677-014 (entitled "Food-Service Worker, Hospital").  Ultimately, the vocational expert
25   concluded that the jobs of hand packager and stubber were appropriate, and consistent with the
     DOT. [AR at 311.] However, given the vocational expert's elimination of the job of food-service
26   worker from the examples of jobs that an individual with plaintiff's vocational profile could perform
     based on the noise level classification of "moderate," it necessarily follows that the same individual
27   would be precluded from performing the job of hand packager based on its higher noise level
     classification of "loud."
28

1    Light v. Social Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (where the vocational expert's

2    testimony differs from the DOT, he must provide a persuasive rationale supported by the evidence

3    to justify the departure).   Neither the vocational expert nor the ALJ pointed to any persuasive

4    evidence, or provided any explanation, to support the departure from the DOT, i.e., no support

5    was offered by either the vocational expert or the ALJ as to how an individual who must avoid

6    even moderate exposure to noise and vibration could perform the job of hand packager cited by

7    the vocational expert in light of the noise level classification of "loud."[10]   No persuasive evidence

8    was presented to support the disparity between the vocational expert's testimony and the DOT.

9    See Heacock v. Astrue, 2008 WL 5233163, at *4 (C.D. Cal. Dec. 12, 2008) (although the

10   vocational expert responded that her testimony was consistent with the DOT, the bench assembler

11   job cited by the vocational expert appeared to be inconsistent with the claimant's RFC and no

12   explanation was provided to support her testimony that the claimant could perform "'some work

13   as a bench assembler'"); cf. Johnson, 60 F.3d at 1435 (ALJ properly relied on vocational expert

14   testimony which deviated from the DOT where "there was persuasive testimony of available job

15   categories in the local rather than the national market, and testimony matching the specific

16   requirements of a designated occupation with the specific abilities and limitations of the

17   claimant.").   Because the record does not contain persuasive evidence to support  the deviation

18   between the vocational expert's testimony and the DOT with respect to the job of hand packager,

19   the ALJ improperly relied on the testimony of the vocational expert.

20

21   _____

22   [10]   Defendant concedes that "the vocational expert's testimony that a hypothetical person
     of [p]laintiff's background with a limitation to moderate noise could perform the job of Hand

23   Packager, is inconsistent with the [DOT]." Joint Stip. at 15.  However, defendant contends that
     the inconsistency is irrelevant because the vocational expert's testimony was based on a

24   hypothetical question that contained a more restrictive functional capacity than that found by the
     ALJ. Id.  Specifically, defendant contends that the jobs cited by the vocational expert were not

25   inconsistent with the less restrictive residual functional capacity assessed by the ALJ, which did
     not have a noise/vibration limitation. Joint Stip. at 15.  While defendant is correct that the ALJ

26   assessed a residual functional capacity that did not include the avoidance of even moderate
     exposure to noise and vibration, the fact that the vocational expert's testimony was inconsistent

27   with the DOT is relevant here in light of the ALJ's assertion that the outcome of this case would

28   remain the same even if he adopted the State Agency internist's opinion.  [AR at 22, 25, 173.]

1

       **2.**    **Stubber**

2

       Plaintiff argues that the ALJ posed an incomplete hypothetical to the vocational expert by

3

failing to incorporate the finding that plaintiff was unable to communicate in English.  Joint Stip.

4

at 16-17.  Specifically, plaintiff asserts that the job of stubber cannot be performed by an individual

5

who is unable to communicate in English.  Joint Stip. at 16.

6

       An ALJ can pose hypothetical questions to the vocational expert to determine whether a

7

claimant can engage in gainful employment.  See Osenbrock v. Apfel, 240 F.3d 1157, 1162-63

8

(9th Cir. 2001).  Hypothetical questions posed to a vocational expert must set forth all of the

9

limitations and restrictions of a particular claimant.  Andrews, 53 F.3d at 1043; Embrey v. Bowen,

10

849 F.2d 418, 422 (9th Cir. 1988).  The vocational expert's opinion about the jobs a claimant can

11

still perform has no evidentiary value if the hypothetical does not contain all the impairments

12

supported by the record.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991); see also

13

Nguyen v. Chater, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) ("Because the hypothetical was

14

incomplete, it does not constitute competent evidence to support a finding that claimant could do

15

the jobs set forth by the vocational expert.").

16

       Here, the ALJ determined that plaintiff "is not able to communicate in English." [AR at 27.]

17

Despite the ALJ's finding in this regard, neither the ALJ nor the vocational expert included

18

plaintiff's inability to communicate in English in describing plaintiff's vocational profile. [AR at 306-

19

07.] Further, the ALJ offered no explanation for his failure to include plaintiff's English language

20

limitation in the hypothetical question posed to the vocational expert.[11]  According to 20 C.F.R. §§

21

404.1564(b)(5) and 416.964(b)(5), "[b]ecause English is the dominant language of the country,

22

_____

23

    [11]   It is noted that if the ALJ had included plaintiff's inability to communicate in English in the
hypothetical question posed to the vocational expert, and if the vocational expert responded that

24

plaintiff could perform the jobs of hand packager and stubber, the ALJ could not rely on such
testimony without eliciting a reasonable explanation for the apparent conflict between the

25

vocational expert's testimony, the DOT language level requirements, and plaintiff's inability to

26

communicate in English.  See, e.g., Turcios v. Astrue, 2008 WL 929122, at *9 (N.D. Cal. Apr. 4,
2008) ("the ALJ is obligated to elicit an explanation on the record for how [a claimant] -- who

27

cannot read English -- can adequately perform a job that requires English language skills"); Pinto,
249 F.3d at 843 n.1 ("[t]here is no indication that [the claimant] knows 2,500 words in English, the

28

requirement to reach language level '1' in the Dictionary of Occupational Titles classifications.").

it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language."  20 C.F.R. §§ 404.1564(b)(5), 416.964(b)(5) (the Social Security Administration "consider[s] a person's ability to communicate in English when . . . evaluat[ing] what work, if any, he or she can do.  It generally doesn't matter what other language a person may be fluent in."); see Pinto, 249 F.3d at 846 ("[t]he ability to communicate is an important skill to be considered when determining what jobs are available to a claimant.").

Defendant contends that "even if the ALJ found that [p]laintiff could not speak English, the ALJ could still make a determination of non-disability based on the Grids because the ALJ was not required to use a vocational expert where he found no significant non-exertional limitations." This assertion is not well taken given the ALJ's conclusion that the outcome of this case would remain the same even if he adopted the nonexertional, environmental limitations found by the State Agency internist.  [AR at 25.]  As discussed, the adoption of the State Agency internist's opinion would have resulted in a finding that plaintiff is capable of performing medium work with frequent postural activities and avoidance of even moderate exposure to noise and vibration.  [AR at 169-76.]  Such a finding, however, does not exactly coincide with the ALJ's finding that plaintiff has the RFC to perform the full range of medium work [AR at 22, 25], and may have made reliance on the grids alone inappropriate.  See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988) (reliance on the grids alone to show the availability of jobs for a claimant is only proper when the grids "accurately and completely describe the claimant's abilities'"); see also Jones, 760 F.2d at 998 ("[t]he very fact that the ALJ chose to call a vocational expert indicates his implicit assumption that [plaintiff's] claim could not be decided by the grids alone."); Tackett v. Apfel, 180 F.3d 1094, 1101-02 (9th Cir. 1999) (significant nonexertional impairments affecting a claimant's residual functional capacity may make reliance on the grids inappropriate); Cooper, 880 F.2d at 1156 n.10 ("[i]f [a claimant] is not capable of doing the full range of medium work because of a nonexertional impairment, then the ALJ would not be allowed to rely solely on the grids to direct a finding of not disabled."); 20 C.F.R., Part 404, Subpart P, Appendix 2 (the rules may not be fully applicable where the nature of an individual's impairment results in environmental restrictions, i.e.,

1    "restrictions which result in inability to tolerate some physical feature(s) of work settings that occur

2    in certain industries or types of work"); Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984) ("[b]y

3    their own terms, the Appendix 2 Guidelines are 'not fully applicable' and are at best a 'framework'

4    for reaching a decision when nonexertional, environmental limitations restrict a claimant's ability

5    to tolerate certain work settings.").  Thus, the ALJ erred by failing to include his finding that plaintiff

6    "is not able to communicate in English" in the hypothetical question posed to the vocational expert.

7             In light of the ALJ's failure to properly consider the State Agency internist's opinion, as well

8    as his failure to properly assess plaintiff's capacity to perform other work given his conclusions in

9    the decision, remand is warranted.

10

11                                              **VI.**

12                          **REMAND FOR FURTHER PROCEEDINGS**

13            As a general rule, remand is warranted where additional administrative proceedings could

14   remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th

15   Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d at 1497.  In this case, remand

16   is appropriate to properly consider the opinion of the State Agency internist, as well as plaintiff's

17   ability to perform other work.  The ALJ is instructed to take whatever further action is deemed

18   appropriate and consistent with this decision.

19            Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**;

20   (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant

21   for further proceedings consistent with this Memorandum Opinion.

22            **This Memorandum Opinion and Order is not intended for publication, nor is it**

23   **intended to be included or submitted to any online service such as Westlaw or Lexis.**

24

25   DATED: March 25, 2009

26                                              _____
                                                         PAUL L. ABRAMS
                                              UNITED STATES MAGISTRATE JUDGE
27

28

                                                    18